## IN THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY, MARYLAND

| | |
|---|---|
| **SODIBAR SYSTEMS INC.**<br>4601 Lydell Road<br>Cheverly, Maryland 20781<br><br>**SODIBAR SYSTEM OF RICHMOND, VA. INC.**<br>4601 Lydell Road<br>Cheverly, Maryland 20781<br><br>**CALEVAS LABORATORIES, INC.**<br>4601 Lydell Road<br>Cheverly, Maryland 20781<br><br>AND<br><br>**DAVID BRETT SIMON**<br>Derivatively on behalf of Sodibar Systems, Inc.,<br>Sodibar System of Richmond, VA, Inc., and<br>Calevas Laboratories, Inc.<br>4601 Lydell Road<br>Cheverly, Maryland 20781<br><br>   **Plaintiffs,**<br><br>   v.<br><br>**MARK SIMON**<br>2350 26th Street<br>Arlington, Virginia 22206<br><br>   **Defendant.** | Case No. _____ |

## COMPLAINT

Plaintiffs, Sodibar Systems Inc., Sodibar System of Richmond, VA. Inc., Calevas Laboratories, Inc., and derivative plaintiff David Brett Simon, by and through undersigned counsel, file this Complaint and sue Defendant Mark Simon and for cause, state as follows:

1

## JURISDICTION & VENUE

1. This Court has jurisdiction under § 6-102 through § 6-103 of the Maryland Code Annotated, Courts and Judicial Proceedings Article.

2. Venue is proper pursuant to § 6-201 of the Maryland Code Annotated, Courts and Judicial Proceedings Article. Material events occurred in Prince George's County, Maryland.

## PARTIES

3. Plaintiff Sodibar Systems Inc. ("Sodibar") is incorporated in the State of (Delaware) with a principal place of business located at 4601 Lydell Road, Cheverly, Maryland 20740.

4. Plaintiff Sodibar Systems of Richmond, VA. Inc. ("Sodibar of Richmond") is incorporated in the Commonwealth of Virginia with a principal place of business located at 4601 Lydell Road, Cheverly, MD 20781.

5. Plaintiff Calevas Laboratories Inc. ("Calevas") is a District of Columbia corporation with its principal place of business located at 4601 Lydell Road, Cheverly, MD 20781. (The three corporate plaintiffs will hereby be referred to collectively as "the Companies").

6. David Brett Simon ("Brett Simon") is a shareholder in each of the Companies. He brings counts one through five in the alternative, as a derivative complaint on behalf of the Companies. He individually holds shares in each of the three Companies and is also the Trustee of the Voting Trust. Collectively, Brett Simon exercises voting rights of 113.25 of the 150 shares of stock outstanding in Sodibar Systems Inc., 75.5 percent of the company stock. Similarly, he also exercises the majority stock in Sodibar Systems of Richmond and in Calevas directly as a shareholder and indirectly as Trustee of Alvin and Jacqueline's (his parent's) shares.

7. Defendant Mark Simon is a shareholder, a director, and a former corporate officer of the Companies. Until September 27, 2013, Mark Simon held the position of Vice President and co-Treasurer of Sodibar, Vice President of Sodibar of Richmond, and President of Calevas. As further explained below, Mark Simon was stripped of his positions at the Companies' board meeting on September 27, 2013 for engaging in self-dealing, waste of corporate assets, breaching his fiduciary duties, and failing to fulfill his duties as a corporate officer.

## FACTS

8. Sodibar Systems Inc. was founded in 1948 in Washington, D.C. by Alvin Simon. The business provided beverage dispensing to area businesses. On June 19, 1986, Alvin Simon, his wife Elva Jacqueline Simon, and his two adult sons, Brett Simon and Mark Simon executed a shareholders' agreement which, together with the bylaws of Sodibar, govern the business.

9. The Simon family wanted to expand its customer base to include Maryland and Virginia and started Sodibar Systems of Richmond and Calevas Laboratories.

10. The Companies supply businesses with beverage dispensers and the syrup for the beverages, which are commonly seen in restaurants:



11. In addition to soda dispensers, the Companies also provide wine, beer, liquor, juice and condiment equipment.

12. David Brett Simon ("Brett Simon") is a shareholder in the Companies. He individually holds shares in each of the three Companies and is also the Trustee of the Voting Trust. Collectively, Brett Simon exercises voting rights of 113.25 of the 150 shares of stock outstanding in Sodibar Systems Inc., 75.5 percent of the company stock. Similarly, he also exercises the majority stock in Sodibar Systems of Richmond and in Calevas directly as a shareholder and indirectly as Trustee of Alvin and Jacqueline's (his parent's) shares.

13. The Voting Trust Agreement dated February 23, 2010 between Alvin Simon, Elva Jacqueline Simon, and Brett Simon transfers the shares of Alvin and Elva Jacqueline Simon to Brett Simon, as trustee. The terms of the Voting Trust provide that it will continue for ten years, until February 23, 2020 and vest upon the Trustee, Brett Simon, the exclusive right to vote the shares of stock held by Alvin and Elva Jacqueline Simon. A nearly identical voting trust agreement was executed on the same date for shares in Calevas Laboratories, Inc. and Sodibar Systems of Richmond, Virginia, Inc.

14. Until recently, Mark Simon was the President and co-treasurer of Calevas, the Vice President and co-treasurer of Sodibar, and Vice President and co-treasurer of Sodibar of Richmond. Mark Simon was also a shareholder and on the board of directors for each of the Companies.

15. Throughout his tenure as a corporate officer, shareholder, and director Mark has engaged in extensive corporate waste and self-dealing and has failed to carry out his responsibilities.

16. Company records dating back as far as December 31, 2010, showed that Mark Simon diverted to himself $707,104.76 from company disbursements. Since then Mark has only increased the amount of funds that he improperly allocated to himself. The Sodibar balance sheet for June 30, 2012 unexplainably records as "other assets" $1,031,544 from the debit card, company checks, and six credit card providers American Express, Diner's Club, CitiBank, Bank of America, Chase and Wells Fargo. Upon information and belief, these "assets" are Mark's obligations to repay company funds misappropriated from improper credit card reimbursements. As of June 1, 2012, the balance sheet shows that loans to Mark Simon exceed $1,000,000.

17. On August 18, 2010, Mark Simon executed a confessed judgment promissory note in the amount $1,269,940.22 with Burke & Herbert, with the loan secured, in part, by the company headquarters at 4601 Lydell Road in Hyattsville and a guarantee for the first $172,616.00 of indebtedness by his father, Alvin Simon and his late mother, Elva Jacqueline Simon. Although the shareholders voted on December 2010 to require "all transactions, loans, checks, or any other transaction" for Sodibar and Calevas to be signed by at least two shareholders, Mark has ignored this requirement and taken steps with (leasing companies) and Burke & Herbert Bank to circumvent this requirement so that he can continue his self-dealing and dissipation of corporate assets.

18. At the November 15, 2010 joint special meeting of the directors and shareholders of the Companies, the shareholders and directors voted that borrowing by the corporation will require discussion by the three directors, Alvin, Brett and Mark Simon, and a majority vote of the three directors. Mark has completely disregarded this direction from the Board and shareholders and continued to enrich himself with Sodibar's assets. He also used Sodibar's credit

to fund new bottling equipment for Calevas through Balboa Capital without adhering to the shareholders' resolution.

19. Additionally, Mark Simon has used company resources to pay for personal expenses for himself and his wife, including expenses for personal travel, personal life insurance, home furnishings, and entertainment. Such purchases include a Kohler soaking tub and Archer left hand drain and a polished chrome drain, invisible fencing chip, expenditures at Old Towne Hardware, payments to Lingo Real Estate to rent a beach house in Rehobeth, Delaware, a $791.38 restaurant bill at Prime Piatti on April 19, 2010, a $970.80 payment at the PGA National Resort & Spa also in April of 2010, a $1,544.85 purchase on July 12, 2010 in the Apple Store, and $244.90 for Washington Nationals tickets to the corporate debit card without documentation as to the legitimacy of this expense. Mark also used company credit to obtain a Ford Motor Credit loan for a car for his wife's adult son, and used Company funds to insure the vehicle in San Francisco, California. Also, a Bank of America credit card was issued to Nina M. Simon, Mark's wife, in the name of Calevas Foods (account ending in 1827). Nina Simon is not a corporate officer or employee of Calevas.

20. Mark Simon's misappropriation extended to improper withdrawals from Company accounts, including $47,000 he caused to be withdrawn from the Sodibar money market account maintained by Burke & Herbert on July 11, 2007. On March 7, 2007, Mark directed that $90,612.15 that Sodibar received from Coca-Cola be electronically returned to Coca-Cola then instructed Coca-cola to resend the funds to a Virginia Commerce account not known to Sodibar and not subject to signature authority by Alvin Simon or Brett Simon as required.

21. Additionally, Mark Simon appears to have used Sodibar's assets to fund corporate start-up expenses related to a company, "Amore Di Acqua" (Italian for "love of water"). Upon information and belief, these expenses may have included legal fees to Heather Davis, Esq. to trademark the "Amore Di Acqua" name in which Mark Simon and Mark Goldman were listed as individual applicants for the trademark, with no interest by Sodibar or its other shareholders. Amore Di Acqua presented a corporate opportunity for the Companies, which Mark Simon usurped for himself.

22. While Mark Simon has been siphoning off corporate funds for years, his actions are now only coming to light. Mark engaged in a pattern and practice of deceiving the Companies and their shareholders and officers. He prevented other shareholders from discovering his dissipation of corporate assets by failing to report and record his use of company funds for personal use. For the last five years, Mark has failed to maintain accurate books and records of Sodibar, Sodibar of Richmond, and Calevas. Additionally, Mark has refused a lawful demand of inspection of the books and records of Sodibar made by Brett Simon. Most egregiously, Mark Simon has changed the locks on the headquarters of the Companies without informing Brett Simon. Mark Simon has also changed the passwords to accounting software to prevent others from accessing pertinent business records, and otherwise concealed corporate records to prevent discovery of the full extent of his misappropriation, fraud, waste, and mismanagement. Because of Mark Simon's failure to timely file federal tax returns, Sodibar and Calevas have been assessed a penalty by the IRS of $95 a shareholder for every month for the past five years.

23. Furthermore, Mark is the owner of the building used as headquarters of Sodibar and Calevas. Despite repeated requests to do so, Mark has refused to enter into a written lease

between himself and Sodibar and Calevas. At a shareholders meeting, Mark Simon refused to agree to a written lease for Sodibar and Calevas because he "didn't want anyone to have any say" over his building. This conduct is self-interested and a clear breach of his fiduciary duty to the companies and their shareholders, forcing them into an at-will tenancy which created substantial risk to the corporation. The absence of lease agreements also facilitated extensive self-dealing by Mark Simon, who used his position as both landlord and manager of the defendant tenancies to pay himself rents in such amounts and on such occasions as he determined without any basis in any written agreement, including, but not limited to 22 months of rent, at $3,574, in 2003-2004 (although Calevas did not move into the building until October 2004), for a total of $57,821; $16,250 deposit to Big Top Building (a metal structure addition on his building); and $1,000 in cash withdrawn from Calevas's account. Similarly, Mark Simon also paid himself 22 months of rent at a rate of $3,574 a month, in 2003-2004 from Sodibar's accounts (although Sodibar did not moved into the building until October 2004), for a total of $57,821. Mark Simon also paid himself $34,247 in settlement fees for his building individually.

24. Mark Simon also caused the Companies to engage in intercompany transfers that have not been adequately documented or reflected on the books and records of either company. These include a $326,059.62 in accounts receivables for Sodibar, $43,888.17 in accounts receivable for Sodibar of Richmond, and $32,260.05 in accounts payable from Sodibar.

25. Mark Simon failed to file tax returns for Sodibar, Sodibar of Richmond and Calevas, and at least until recently, failed to even pay the company's accountant, Aronson LLC, so that timely tax returns could be filed. Mark Simon's mis-conduct not only violates the law, but has exposed both the corporations and their shareholders to substantial risk for interest and penalties, causing these shareholders to incur damages for his wrongful conduct. Additionally,

his failure to file tax returns for at least five years has jeopardized the financial position of the companies, created individual risk for the shareholders and been one factor in the company's failure under Mark Simon's leadership to maintain accurate books and records under generally accepted accounting principles. Because of Mark Simon's failure to timely file federal tax returns, Sodibar and Calevas have been assessed a penalty by the IRS of $95 a shareholder for every month for the past five years.

26. Additionally, Mark Simon failed to respond timely to requests for documentation by taxing authorities in the District of Columbia, resulting in imposition of additional taxation liability to Sodibar.

27. Mark Simon's abdication of his corporate duties, his dissipation of corporate funds for personal use, his self-interest, and his disregard of corporate formalities has severely damaged the Companies.

28. Revenue for Sodibar for the current fiscal year appears to have declined by at least $400,000 on an annualized basis.

29. On September 6, 2013, Brett Simon made a demand on the board of directors for the Companies, demanding that the boards: 1) immediately obtained the resignation of Mark Simon, and failing that, to terminate his employment with the Companies; 2) place Mark Simon's shares of stock in the company in trust; 3) retain a company accountant to file all outstanding tax returns and prepare outstanding financial statements; 4) demand the return of all funds misappropriated from the companies by Mark Simon; 5) impose financial controls to prevent future misappropriation; 6) elect new officers and directors; and 7) initiate suit against Mark Simon if he does not immediately make repayment of the funds misappropriated from the companies.

30. Mark Simon did not respond to the September 6, 2013 demand letter.

31. On September 18, 2013, Brett Simon called a board of directors and shareholder meeting for the Companies to be held on the September 27, 2013. Mark Simon received notification of the meeting and proposed agenda. Mark Simon failed to appear at the meeting. At the September 27, 2013 meeting the board of directors approved the following motions that were called:

    a. Authorize the engagement of independent counsel for the Companies and direct that counsel to file suit in the name of the Companies against Mark Simon to recover for his self dealing and the waste and dissipation of corporate assets;

    b. Authorize the termination of Mark Simon as President, and co-treasurer of Calevas;

    c. Authorize the termination of Mark Simon as Vice President and co-treasurer of Sodibar;

    d. Authorize the termination of Mark Simon as Vice President and co-treasurer of Sodibar of Richmond;

    e. Accept the resignation of Alvin Simon as President of Sodibar and to authorize retirement for Alvin Simon;

    f. Appoint Alvin Simon as Chairman Emeritus of Sodibar Systems Incorporated;

    g. Accept the resignation of Alvin Simon as President of Sodibar Systems of Richmond, VA and to authorize retirement for Alvin Simon;

    h. Accept the resignation of Alvin Simon as Vice President of Calevas Laboratories and to authorize retirement for Alvin Simon;

    i. Election of a new President and Vice President for Calevas and to replace Mark Simon and Alvin Simon, respectively, with David Brett Simon;

    j. Election of a new President and Vice President for Sodibar and to replace Alvin Simon and Mark Simon, respectively, with David Brett Simon;

    k. Election of a new President and Vice President for Sodibar of Richmond and to replace Alvin Simon and Mark Simon, respectively, with David Brett Simon;

 l. Place Mark Simon's shares in Calevas, Sodibar Systems of Richmond, VA and Sodibar in escrow in each company's respective treasury until payment can be made by each respective company per the shareholder's agreement; and

 m. Authorize the payment of outstanding bills to the Aronson accounting firm and to authorize the rehiring of the Aronson accounting firm or the hiring of a different accountant to file all outstanding tax returns and prepare outstanding financial statements for Sodibar, Sodibar of Richmond, VA and Calevas;

32. On October 10, 2013, Mark Simon was notified of the boards' votes and the board demanded that he relinquish by 2 p.m. Monday, October 14, 2013 the keys to all of the Companies' headquarters, return any and all property, including, but not limited to, checkbooks and debit cards, to David Brett Simon, and immediately desist in the use of any and all of the Companies' funds. Mark failed to meet the Companies' demands.

## COUNT 1
### (Fraud)

33. Plaintiffs re-allege and incorporate by reference all the factual allegations in this Complaint.

34. As a shareholder, director, and corporate officer Mark Simon was accountable to the Companies and to the other shareholders as a fiduciary. Mark Simon owed the Companies and the other shareholders, including David Brett Simon, a duty to act for the benefit of the Companies with loyalty and good faith, without any self-interest or self-dealing.

35. Mark Simon breached his duty to the Companies and engaged in self-dealing when he used the Companies' funds for his personal expenses, failed to maintain corporate formalities, changed the locks on the Companies' headquarters, and failed to provide other shareholders to the books and records of the company as he is required by law and by the shareholders' agreement. For example, Mark Simon failed to file corporate tax returns resulting

in tax penalties, diverted nearly $1,000,000 of the Companies' funds to finance his and his family's personal expenses, failed to respond to the D.C. government's requests for documentation, refused to provide Sodibar and Calevas with a written lease, and usurped corporate opportunity.

36. Mark Simon further breached his fiduciary duty when he purposefully concealed his actions from the other shareholders by changing the passwords to the Companies' electronic accounting records, failed to responds to demands for inspection of the Companies' books and records, and failed to maintain corporate records.

37. Mark Simon acted with intent to deceive the Companies, their shareholders, and their directors. He knew the Companies, their shareholders, and their directors would act in a different manner had they known of Mark's siphoning of corporate funds, his numerous failures to carry out his corporate duties, and his usurpation of corporate opportunity.

38. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered damages, including, but not limited to, the loss of revenue.

WHEREFORE, Plaintiffs respectfully request that a judgment be entered against the Defendant for compensatory damages in excess of $75,000 plus interest, costs, attorney fees, and such other relief as the nature of this cause may require and this Court deems just and proper.

## COUNT 2
### (Constructive Fraud)

39. Plaintiffs re-allege and incorporate by reference all the factual allegations in this Complaint.

40. As a shareholder, director, and corporate officer Mark Simon was accountable to the Companies and to the other shareholders as a fiduciary. Mark Simon owed the Companies

and the other shareholders, including David Brett Simon, a duty to act for the benefit of the Companies with loyalty and good faith, without any self-interest or self-dealing.

41.     Mark Simon breached his duty to the Companies and engaged in self-dealing when he used the Companies' funds for his personal expenses, failed to maintain corporate formalities, changed the locks on the Companies' headquarters, and failed to provide other shareholders to the books and records of the company as he is required by law and by the shareholders' agreement. For example, Mark Simon failed to file corporate tax returns resulting in tax penalties, diverted nearly $1,000,000 of the Companies' funds to finance his and his family's personal expenses, failed to respond to the D.C. government's requests for documentation, refused to provide Sodibar and Calevas with a written lease, and usurped corporate opportunity.

42.     Mark Simon further breached his fiduciary duty when he purposefully concealed his actions from the other shareholders by changing the passwords to the Companies' electronic records, failed to responds to demands for inspection of the Companies' books and records, and failed to maintain corporate records.

43.     As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered damages, including, but not limited to, the loss of revenue.

WHEREFORE, Plaintiffs respectfully request that a judgment be entered against the Defendant for compensatory damages in excess of $75,000 plus interest, costs, attorney fees, and such other relief as the nature of this cause may require and this Court deems just and proper.

### COUNT 3
### (Negligence Based on Fiduciary Duty)

44.     Plaintiffs re-allege and incorporate by reference all the factual allegations in this Complaint.

45. As a shareholder, director, and corporate officer Mark Simon was accountable to the Companies and to the other shareholders as a fiduciary. Mark Simon owed the Companies and the other shareholders, including David Brett Simon, a duty to act for the benefit of the Companies with loyalty and good faith, without any self-interest or self-dealing.

46. Mark Simon breached his duty to the Companies and engaged in self-dealing when he used the Companies' funds for his personal expenses, failed to maintain corporate formalities, changed the locks on the Companies' headquarters, and failed to provide other shareholders to the books and records of the company as he is required by law and by the shareholders' agreement. For example, Mark Simon failed to file corporate tax returns resulting in tax penalties, diverted nearly $1,000,000 of the Companies' funds to finance his and his family's personal expenses, failed to respond to the D.C. government's requests for documentation, refused to provide Sodibar and Calevas with a written lease, and usurped corporate opportunity.

47. Mark Simon further negligently breached his fiduciary duty when he failed to timely disclose the foregoing actions to the other shareholders, and failed to responds to demands for inspection of the Companies' books and records, failed to maintain corporate records, and failed to have corporate tax documents filed.

48. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered damages, including, but not limited to, the loss of revenue.

WHEREFORE, Plaintiffs respectfully request that a judgment be entered against the Defendant for compensatory damages in excess of $75,000 plus interest, costs, attorney fees, and such other relief as the nature of this cause may require and this Court deems just and proper.

## COUNT 4
### (Accounting)

49. Plaintiffs re-allege and incorporate by reference all the foregoing factual allegations.

50. Mark Simon has held the position of shareholder, director, and corporate officer for the Companies for at least the last ten years. Brett Simon, as a shareholder, director, corporate officer, and trustee, has repeatedly requested both informally and formally an accounting by Mark Simon of the Companies' funds, including of the monies that have been wrongfully diverted from the Companies. Defendant Mark Simon has consistently refused, without reason or justification, to make any accounting. Mark Simon has also changed the passwords to the programs that would allow other corporate officers and directors to access the financial records of the Companies'.

51. Based on Defendant Mark Simon's past conduct, the Companies and their shareholders, including Brett Simon, are reasonably fearful that, unless enjoined by an order of this Court, Mark Simon will continue to ignore and refuse requests by shareholders, directors, and other corporate officers to provide access to business records that conclusively demonstrate how much Mark Simon has diverted away from the Companies. Additionally, the Companies, and their shareholders, including Brett Simon, are justifiably fearful that Mark Simon may attempt to change, alter, or destroy business and other records of the business insofar as they may apply to the subject matter of this lawsuit.

WHEREFORE, Plaintiffs respectfully demand that:

a) Defendant be ordered by a decree of this Court to fully and completely account for all sums due Plaintiffs that were diverted to personal use by the Defendant, either through a loan from the Companies, reimbursements, or charges directly made to the Companies' accounts;

b) Plaintiffs have a judgment against Defendant in the sum found to be due to Plaintiffs on such accounting, with interest together with the costs and disbursements of this action; and

c) Plaintiffs have such other and further relief as may be just and equitable.

### COUNT 5
**(Request for Temporary, Preliminary, and Permanent Injunctive Relief)**

52. Plaintiffs re-allege and incorporate by reference all the foregoing factual allegations.

53. This is an action for a temporary restraining order, and preliminary and permanent injunctive relief.

54. Defendant Mark Simon has and continues to use the Companies as a means of directly enriching himself, and in violation of his duties to the Companies. Upon information and belief, Mark Simon has wrongfully diverted approximately $1,000,000 from the Plaintiffs.

55. Moreover, Mark Simon has direct access to all of the Companies' accounts, records, books, and lines of credit. He has designated himself as the sole authorized person on several accounts. He has changed the locks on the Companies' headquarters. Furthermore, he has changed the passwords of electronic financial records so they cannot be accessed by anyone other than himself or certain favored employees. The other shareholders and the corporate officers cannot access necessary financial information to make informed decisions regarding the day-to-day operations of the Companies.

56. Unless this Court enjoins Mark Simon from accessing the Companies' funds and records, Mark Simon will continue to spend money he is not authorized to spend and will prevent other shareholders, directors, and corporate officers from accessing the corporate records. Mark's unabated corporate waste places the Companies in financial peril.

57. Unless Plaintiffs are awarded immediate injunctive relief, they will suffer immediate, substantial, and irreparable harm, including, but not limited to, the continuing loss of its capital and credit to the extent that it will no longer be able carry on their business.

58. There exists a strong likelihood that Plaintiffs will succeed on the merits of its claims.

59. The benefits to Plaintiffs in obtaining injunctive relief are equal to or outweigh the potential harm that Defendant would incur if this Court grants the requested injunctive relief.

60. The public interest is best served by granting an injunction.

WHEREFORE, Plaintiffs respectfully requests that:

(a) Defendant Mark Simon be temporarily, preliminarily and permanently enjoined from transferring funds out of the Companies via the use of debit cards, checks, or reimbursements;

(b) Defendant Mark Simon be enjoined from accessing financial records of the Companies;

(c) Defendant Mark Simon be ordered to turn over keys to the headquarters of the Companies;

(d) Defendant Mark Simon be ordered to grant access to the financial records kept in Quickbooks and Peachtree to shareholder Brett Simon by informing Brett Simon of the passwords for the foregoing software;

(e) Defendant Mark Simon be ordered to return all property belonging to the Companies, including cell phones and vehicles;

(f) Defendant Mark Simon be ordered to show cause as to why a preliminary injunction should not be granted;

(g) This Court order expedited discovery; and (h) This Court award Plaintiffs other relief as the Court deems just and proper.

## ALTERNATIVE SHAREHOLDER DERIVATIVE LAWSUIT

61.     David Brett Simon pleads a shareholder derivative lawsuit, in the alternative, if the September 27, 2013 board of directors meeting is found to be invalid.

62.     Paragraphs 1 through 60 are incorporate herein as if fully set forth below.

63.     If this Court finds, *arguendo*, that the shareholder meeting called on September 27, 2013 and the votes that took place at such meeting are invalid, than shareholder David Brett Simon ("Brett Simon") brings this lawsuit in his shareholder capacity and derivatively on behalf of Sodibar Systems, Inc., Sodibar Systems of Richmond, VA, Inc., and Calevas Laboratories Inc.

64.     On September 6, 2013, Brett Simon made a demand on the board of directors of the Companies, demanding that the boards: 1) immediately obtained the resignation of Mark Simon, and failing that, to terminate his employment with the Companies; 2) place Mark Simon's shares of stock in the company in trust; 3) retain a company accountant to file all outstanding tax returns and prepare outstanding financial statements; 4) demand the return of all funds misappropriated from the companies by Mark Simon; 5) impose financial controls to prevent future misappropriation; 6) elect new officers and directors; and 7) initiate suit against Mark Simon if he does not immediately make repayment of the funds misappropriated from the companies.

65.     If this Court finds that the September 27, 2013 board meeting and the subsequent votes on Brett Simon's demands are invalid, than Brett Simon alternatively pleads that the board of directors have refused his demands.

18

66. Such a refusal would be without any justification whatsoever, as no valid defense exists as to Defendant Mark Simon's obligation to pay the Companies for the full amount that he has wrongfully diverted for his personal use and his willful disregard of his corporate responsibilities and duties.

67. Brett Simon is and has been a shareholder of the Companies for at least the last ten years.

68. Upon information and belief, Brett Simon avers that one reason the Companies do no institute suit against Defendant Mark Simon is because Mark Simon sits on the board of directors for the Companies and will not authorize action against himself.

69. Defendant Mark Simon's wrongful conduct was intentional, without permission or justification, and constituted conversion of the Companies' money.

WHEREFORE, David Brett Simon, on behalf of the Companies, respectfully request that

a) a judgment be entered against the Defendant for compensatory damages in excess of $75,000;

b) Defendant Mark Simon be temporarily, preliminarily and permanently enjoined from transferring funds out of the Companies via the use of debit cards, checks, or reimbursements;

c) Defendant Mark Simon be enjoined from accessing financial records of the Companies;

d) Defendant Mark Simon be ordered to turn over keys to the headquarters of the Companies;

e) Defendant Mark Simon be ordered to grant access to the financial records kept in Quickbooks and Peachtree to shareholder Brett Simon by informing Brett Simon of the passwords for the foregoing software;

f) Defendant Mark Simon be ordered to return all property belonging to the Companies, including cell phones and vehicles;

g) Defendant Mark Simon be ordered to show cause as to why a preliminary injunction should not be granted;

h) this Court order expedited discovery; and

i) this Court award Plaintiffs other relief as the Court deems just and proper.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury as to all matters triable of right.

Respectfully submitted,

JOSEPH, GREENWALD, & LAAKE, P.A.

By: *[signature]*
Timothy F. Maloney
Joseph M. Creed
Hina Z. Hussain
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770
(301) 220-2200
(301) 220-1212 / facsimile
Counsel for Plaintiff